UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ILYAS ALI,

                              Petitioner,

        - against -                                      **No. 19 Civ. 8645 (LGS)**

DHS/ICE/DEPT. OF JUSTICE,

                              Respondent.

**RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS OR TO TRANSFER THE CASE TO THE NORTHERN DISTRICT OF
ALABAMA**

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for Respondent
                                        86 Chambers Street, Third Floor
                                        New York, New York 10007
                                        Tel.:    (212) 637-2699

JOSHUA E. KAHANE
Assistant United States Attorney
        – Of Counsel –

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ......................................................................................................1

BACKGROUND ..........................................................................................................................2

        A.      Ali's removal proceedings and detention .................................................2

        B.      Ali's habeas petition ...............................................................................5

ARGUMENT

THE COURT SHOULD DISMISS THIS ACTION OR, IN THE ALTERNATIVE,
        TRANSFER IT TO THE NORTHERN DISTRICT OF ALABAMA ...............................6

CONCLUSION............................................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Andoh v. Barr*,
    No. 19 Civ. 8016 (PAE), 2019 WL 4511623 (S.D.N.Y. Sept. 18, 2019).................... 7, 14

*Arevalo-Guasco v. Dubois*,
    --- F. App'x ---, 2019 WL 4419380 (2d Cir. Sept. 17, 2019) ............................................ 8

*Bacuku v. Shanahan*,
    No. 16 Civ. 0305 (LGS), 2016 WL 1162330 (S.D.N.Y. Mar. 1, 2016) ............................ 8

*Benitez v. An Unknown Immigration Officer Employed by the Dep't of Homeland Sec.*,
    No. 19 Civ. 3153 (GHW), ECF No. 7 (S.D.N.Y. July 22, 2019) ...................................... 9

*Brudy v. Decker*,
    No. 19-cv-1565 (LGS), ECF No. 7 (S.D.N.Y. Feb. 25, 2019) ......................................... 8

*Calderon v. Sessions*,
    330 F. Supp. 3d 944 (S.D.N.Y. Aug. 1, 2018)............................................................... 10

*Cruz v. Decker*,
    No. 18-cv-9948 (GBD) (OTW), 2019 WL 4038555 (S.D.N.Y. Aug. 27, 2019)....... 11, 12

*Ex Parte Endo*,
    323 U.S. 283 (1944)....................................................................................................... 8

*Farez-Espinoza v. Chertoff*,
    600 F. Supp. 2d 488 (S.D.N.Y. 2009)........................................................................... 10

*Golding v. Sessions*,
    No. 18-cv-3036 (RJS), 2018 WL 6444400 (S.D.N.Y. Dec. 6, 2018).............................. 13

*Guo v. Napolitano*,
    No. 09 Civ. 3023 (PGG), 2009 WL 2840400 (S.D.N.Y. Sept. 2, 2009) ........................... 7

*Henderson v. INS*,
    157 F.3d 106 (2d Cir. 1998)............................................................................................ 8

*Lemus-Pineda v. Whitaker*,
    354 F. Supp. 3d 473 (S.D.N.Y. 2018)........................................................................... 13

*Lizardo v. Whitaker*,
    No. 18-CV-8476 (VEC), 2018 WL 6444371 (S.D.N.Y. Dec. 5, 2018)........................... 13

*Mahmood v. Nielson*,
    312 F. Supp. 3d 417 (S.D.N.Y. 2018)........................................................................... 10

*Matias Madera v. Decker*,
    No. 18 Civ. 7314 (AKH), ECF No. 30 (S.D.N.Y. Sept. 30, 2018)..................................10

*Medina-Valdez v. Holder*,
    No. 12 Civ. 6002 (RA), 2012 WL 4714758 (S.D.N.Y. Oct. 1, 2012) ..............................17

*Pacheco Uzho*,
    No. 19-CV-7152 (VEC), ECF No. 11 (S.D.N.Y. Sept. 27, 2019)...................................14

*Peng v. Barr*,
    No 19-cv-4525 (LGS), ECF No. 2 (S.D.N.Y. May 17, 2019)...........................................8

*Ramirez Portillo v. Decker*,
    No. 19 Civ. 572 (PKC), 2019 WL 1409450 (S.D.N.Y. Mar. 28, 2019) ..........................16

*Ramos Perez v. Decker*,
    355 F. Supp. 3d 185 (S.D.N.Y. 2019).............................................................................16

*Rodriguez Sanchez v. Decker*,
    No. 18-cv-8798 (AJN), 2019 WL 3840977 (S.D.N.Y. Aug. 15, 2019)...............11, 12, 13

*Rumsfeld v. Padilla*,
    542 U.S. 426 (2004)..................................................................................................*passim*

*S.N.C. v. Sessions*,
    325 F. Supp. 3d 401 (S.D.N.Y. 2018)..................................................................9, 10, 13

*Salcedo v. Decker, No. 18-cv-8801 (RA)*,
    2019 WL 339642 (S.D.N.Y. Jan. 28, 2019) ............................................................13, 16

*Shehnaz v. Ashcroft*,
    No. 04 Civ. 2578 (DLC), 2004 WL 2378371 (S.D.N.Y. Oct. 25, 2004).........................14

*Sikivou v. DHS*,
    No. 06 Civ. 5530 (PKC), 2007 WL 2141564 (S.D.N.Y. July 25, 2007).........................14

*Singh v. Holder*,
    No. 12 Civ. 4731 (JMF), 2012 WL 5878677 (S.D.N.Y. Nov. 21, 2012) ....................9, 11

*Thomas v. Decker*,
    No. 19 Civ. 8690 (JMF), Transcript (attached hereto as Exhibit 1)
    at 17:16-18:24 (S.D.N.Y. Oct. 16, 2019).......................................................................13

*Torres Martinez v. Decker*,
    No. 19-cv-8727-GHW-KNF, ECF No. 7 (S.D.N.Y. Oct. 2, 2019) .................................14

*You v. Nielsen*,
    321 F. Supp. 3d 451 (S.D.N.Y. 2018).............................................................................10

*Zadvydas v. Davis*,
    533 U.S. 678 (2001).................................................................................... 5

## **<u>Statutes</u>**

8 U.S.C. § 1182(a)(7)(A)(i)(I) ........................................................................ 2

28 U.S.C. § 1631 .......................................................................................... 14

28 U.S.C. § 2241 ................................................................................... 1, 5, 6

28 U.S.C. § 2243 .......................................................................................... 12

The government, by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion to dismiss or to transfer this case to the United States District Court for the Northern District of Alabama.

## PRELIMINARY STATEMENT

Ilyas Ali ("Ali"), a native and citizen of Pakistan who has a final order of removal and is detained in Louisiana, challenges his detention by U.S. Immigration and Customs Enforcement ("ICE").  He seeks an order from this Court granting his petition for a writ of habeas corpus, directing ICE to release him from his supposedly "arbitrary" and "punitive" detention, and enjoining Respondent from revoking his parole – *i.e.*, re-detaining him – once he is released.  ECF No. 1 ("Pet.").

As this Court consistently has held in three similar cases, the Southern District of New York is not the proper forum for challenges to present physical detention brought under 28 U.S.C. § 2241 by aliens who, like Ali, are detained outside this District when they file their habeas petitions.  Federal district courts possess limited authority to grant writs of habeas corpus within their respective jurisdictions.  On the date that he filed this action, Ali was detained at the Etowah County Detention Center in Gadsden, Alabama, and he was not physically present in New York at any time on that date.  Venue is therefore improper in the Southern District of New York.  Instead, venue is proper only in the Northern District of Alabama—the district of confinement.

Accordingly, this Court should dismiss this action for lack of jurisdiction/venue, or transfer it to the United States District Court for the Northern District of Alabama, where Ali was detained when he filed the petition, and which is the only proper court to consider Ali's claims.  If the Court decides to transfer the case, to minimize any delay in having the case heard in the proper forum,

the government respectfully requests that the Court waive the seven-day waiting period contained in Local Civil Rule 83.1.

## BACKGROUND

### A.    Ali's removal proceedings and detention

Ali, a native and citizen of Pakistan, attempted to enter the United States at Los Angeles, California with a fraudulent lawful permanent resident identification card on December 1, 2000. *See* Declaration of Senior Detention and Deportation Officer Perry Zaner ("Zaner Decl.") ¶ 3. Ali expressed a fear of harm and was referred to an asylum officer for an asylum interview. *Id.* At this time, Ali was detained by the Immigration and Naturalization Service ("INS").[1] *Id.* On December 14, 2000, an asylum officer interviewed Ali and found that Ali had a credible fear of harm should he be returned to Pakistan. *Id.* ¶ 4.

On December 20, 2000, the INS served Ali with a Notice to Appear ("NTA") charging him as removable pursuant to Immigration and Nationality Act ("INA") sections 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who by fraud or willful misrepresentation of a material fact seeks to procure (or has sought to procure) a visa, other documentation, or entry into the United States, and 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant who at the time of application for admission to the United States is not in possession of valid entry documentation. *Id.* ¶ 5. The INS subsequently served the NTA on the immigration court, thereby commencing removal proceedings against Ali. *Id.*

Between January 2, 2001 and April 29, 2003, Ali had several hearings before an immigration judge at which Ali filed and prosecuted an application for relief from removal. *Id.* ¶ 6. On April 29, 2003, an immigration judge denied Ali's application for relief from removal and

---

[1] The INS ceased to exist in March 2003 and many of its functions were transferred to ICE.

ordered him removed to Pakistan.  *Id.* ¶ 7.  Ali filed an appeal of the immigration judge's decision with the Board of Immigration Appeals ("BIA"), and the BIA affirmed the decision of the immigration judge on April 20, 2004, rendering Ali's removal order final.  *Id.* ¶ 8.  On June 23, 2004, Ali filed a motion to reopen and reconsider with the BIA, which was denied on July 23, 2004.  *Id.* ¶ 9.  On August 20, 2004, Ali filed a petition for review with the U.S. Court of Appeals for the Second Circuit ("Second Circuit"), which was denied on December 9, 2005.  *Id.* ¶ 10.

On November 27, 2013, ICE arrested Ali for the purpose of effectuating his final order of removal.  *Id.* ¶ 11.  On February 18, 2014, Ali filed a second motion to reopen with the BIA, which denied that motion on April 10, 2014.  *Id.* ¶ 12.  On February 19, 2014, ICE released Ali on an Order of Supervision ("OSUP") because ICE had not yet secured a travel document sufficient for Ali's removal to Pakistan.  *Id.* ¶ 13.  On May 1, 2014, Ali filed a petition for review with the Second Circuit of the BIA's decision denying his motion to reopen, which was subsequently denied on July 28, 2015.  *Id.* ¶ 14.

On or about November 16, 2018, the Government of Pakistan indicated that it had confirmed Ali as a national of Pakistan and indicated it would issue a travel document for him.  *Id.* ¶ 15.  ICE subsequently received the travel document from the Government of Pakistan.  *Id.*  On December 4, 2018, ICE revoked Ali's OSUP and detained him for the purpose of executing his final order of removal.  *Id.* ¶ 16.  That same day he was transferred to the Bergen County Jail in Hackensack, New Jersey pending his removal.  *Id.*

On the evening of January 10, 2019, and into the early morning of January 11, 2019, ICE attempted to remove Ali from the United States on a flight out of John F. Kennedy International Airport in Queens, New York.  *Id.* ¶ 17.  Ali resisted those efforts by becoming physically and verbally combative and ICE officers were unable to get Ali to the jetway entrance.  *Id.*  As a result,

Ali was returned to ICE detention pending another attempt to remove him from the United States. *Id.* Ali was taken to the Hudson County Correctional Facility, in Kearny, New Jersey, pending this second attempt. *Id.*

On April 1, 2019, Ali filed another motion to reopen with the BIA, which issued a stay of removal that same day. *Id.* ¶ 18. On July 16, 2019, the BIA denied the motion to reopen, thereby terminating the stay of removal, and there is no indication that Ali filed a petition for review with the court of appeals from that decision. *Id.* ¶ 19.

On August 20, 2019, ICE initiated a transfer of Ali to the Etowah County Detention Center in Gadsden, Alabama, to be held pending his removal. *Id.* ¶ 20. Prior to this transfer, Ali's case was under the docket control of the ICE field office in New York, New York. *Id.* Since being transferred to the facility in Alabama on that date, Ali's removal case has been under the docket control of Gadsden, Alabama sub-office of the ICE field office in New Orleans, Louisiana. *Id.* Ali was present at that facility from August 25, 2019 to September 26, 2019, when ICE initiated the transfer of Ali back to the New York area for the sole purpose of executing another removal attempt. *Id.*

On September 29, 2019, ICE attempted to remove Ali again on a flight out of John F. Kennedy International Airport in Queens, New York. *Id.* ¶ 21. Ali again obstructed the boarding process and was subsequently returned temporarily to Hudson County Correctional Facility in Kearny, New Jersey, where he remained until October 1, 2019. *Id.* On October 1, 2019, ICE initiated the transfer of Ali to the LaSalle Detention Facility in Jena, Louisiana.[2] *Id.* ¶ 22. Ali remains detained at this facility pending his removal from the United States. *Id.* Because Ali

[2] Ali's case remains under the docket control of the Gadsden, Alabama sub-office of the ICE field office in New Orleans, Louisiana. Zaner Decl. ¶ 22.

obstructed ICE's efforts to remove him on two separate occasions on commercial flights, ICE's next removal attempt will be by a private ICE chartered flight. *Id.*

Ali was not present in New York on September 17, 2019, the date that he filed his habeas petition initiating this action.[3] *Id.* ¶ 23. Instead, Ali was physically present and confined only in Alabama at the Etowah County Detention Center on that date. *Id.* From August 25, 2019 to September 26, 2019, while Ali was detained in Alabama at the Etowah County Detention Center, Keith Peeks, the Chief Deputy for Corrections (*i.e.*, the warden) exercised direct physical custody and physical control over Ali while he was detained there. *Id.* ¶¶ 23, 24.

**B.    Ali's habeas petition**

On September 17, 2019, Ali filed a *pro se* habeas petition under 28 U.S.C. § 2241 in this Court while he was physically present in Alabama. *See* Pet. 1-2; Zaner Decl. ¶ 23. Ali's petition challenges his current immigration detention as unlawful, and he seeks an order from this Court requiring the government to release him from detention and enjoining the government from revoking his parole without a violation of the terms and conditions of his parole. Pet. 2.[4]

---

[3] Ali was last in New York on October 1, 2019, the date he was processed for his transfer to the LaSalle Detention Facility in Jena, Louisiana. Zaner Decl. ¶ 23.

[4] Although this Court lacks jurisdiction/venue to hear this case, Ali's request for habeas relief would fail on the merits. Ali's assertions that he is subject to continued indefinite detention as in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that he has "helped the Dept. of Homeland Security to remove [him] from this country," *see* Pet. 1-2, are undermined by the fact that Ali has obstructed his own removal at least twice this year already. *See* Zaner Decl. ¶¶ 17, 21. Ali is not entitled to relief under *Zadvydas*, which applies to aliens who cannot be removed because their country of origin refuses to accept them.

**ARGUMENT**

**THE COURT SHOULD DISMISS THIS ACTION OR, IN THE ALTERNATIVE, TRANSFER IT TO THE NORTHERN DISTRICT OF ALABAMA**

A habeas petition brought under 28 U.S.C. § 2241 challenging detention must be brought against the immediate custodian and filed in the district in which the petitioner is detained. Venue is improper in the Southern District of New York because Ali did not file his habeas petition while being detained in New York. Rather, Ali filed the habeas petition in this Court while he was physically present in and confined only at the Etowah County Detention Center in Gadsden, Alabama. Thus, the Court should conclude that only the Northern District of Alabama has jurisdiction over Ali's challenge to his detention, and the Court should either dismiss this action or transfer it to the United States District Court for the Northern District of Alabama.

The Supreme Court has made clear that in "core" habeas petitions—*i.e.*, petitions like the instant one that challenge the petitioner's present physical confinement—the petitioner must file the petition in the district in which he is confined (*i.e.*, the district of confinement) and name his warden as the respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004). In *Padilla*, the Supreme Court described habeas petitions challenging a petitioner's present physical confinement (*i.e.*, detention) as "core" habeas petitions. *Id.* at 445. For review of such "core" petitions, "jurisdiction lies in only one district: the district of confinement." *Id.* at 443. Accordingly, "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of

confinement."[5] *Id.* at 447; *see also id.* at 443 (explaining that "[t]he plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement"). In embracing the "immediate custodian" rule, the Supreme Court explained that limiting a district court's jurisdiction to issue a writ to custodians within their jurisdiction "serves the important purpose of preventing forum shopping by habeas petitioners." *Padilla*, 542 U.S. at 447 (observing that the result of disregarding the immediate custodian rule "would be rampant forum shopping, district courts with overlapping jurisdiction, and the very inconvenience, expense, and embarrassment Congress sought to avoid when it added the jurisdictional limitation [in 1867]").

Although *Padilla* addressed a habeas petition outside of the immigration context, based on *Padilla*'s holding and logic, a "clear majority of district courts" within the Second Circuit have applied "the immediate custodian rule to habeas petitions filed by incarcerated aliens challenging their physical detention prior to deportation." *Guo v. Napolitano*, No. 09 Civ. 3023 (PGG), 2009 WL 2840400, at *3 (S.D.N.Y. Sept. 2, 2009) (collecting cases). "The substantial majority of judges in this District to consider this question have reached the same conclusion, holding that a [petitioner] detained in New Jersey who seeks to challenge his detention, even if under the supervision of ICE personnel in this District, must bring a habeas action in the District of New Jersey." *Andoh v. Barr*, No. 19 Civ. 8016 (PAE), 2019 WL 4511623, at *2 (S.D.N.Y. Sept. 18, 2019).

---

[5] In adopting the "immediate custodian" rule, the Supreme Court rejected the "legal reality of control" standard and held that legal control does not determine the proper respondent in a habeas petition that challenges present physical confinement. *See Padilla*, 542 U.S. at 437-39; *see also id.* at 439 ("In challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent.").

This Court has applied the analysis set forth in *Padilla* at least three times, including twice in the past year, and each time has held that the petitioner's challenge to his present physical confinement was a "core" habeas challenge, that the proper respondent was the warden of the facility where the petitioner was being held, and that jurisdiction was proper not in this District, but in the district of confinement. *See Peng v. Barr*, No 19-cv-4525 (LGS), ECF No. 2 (S.D.N.Y. May 17, 2019); *Brudy v. Decker*, No. 19-cv-1565 (LGS), ECF No. 7 (S.D.N.Y. Feb. 25, 2019); s*ee also Bacuku v. Shanahan*, No. 16 Civ. 0305 (LGS), 2016 WL 1162330, at *1 (S.D.N.Y. Mar. 1, 2016) (applying *Padilla* and transferring the case to the district of confinement).  There are no facts in Ali's petition that would distinguish his case from the cases in which this Court previously has applied *Padilla*, and therefore this Court should once again apply *Padilla* and transfer this case to the district of confinement.

Consistent with this Court's approach (and that of the majority of judges in this District), in an appeal from the denial of an immigration habeas petition, the Second Circuit, in denying the petitioner's request to withdraw the appeal on the basis that the court no longer had jurisdiction because the petitioner had been moved to a facility outside of the Second Circuit, stated: "We agree with the government that the key is where [the petitioner] was detained when he filed his habeas petition." *Arevalo-Guasco v. Dubois*, --- F. App'x ---, 2019 WL 4419380 (2d Cir. Sept. 17, 2019) (citing *Padilla*, 542 U.S. at 441; *Henderson v. INS*, 157 F.3d 106, 125 (2d Cir. 1998)).[6] For purposes of this case, the clear import of the Second Circuit's statement that "the key is where [the petitioner] was detained when he filed his habeas petition" is that Ali's presence in Gadsden,

---

[6] The Second Circuit's citations in *Arevalo-Guasco* to both *Padilla* and *Henderson* concern *Ex Parte Endo*, 323 U.S. 283 (1944), a case in which the Supreme Court explained that a district court properly acquires jurisdiction when the petitioner names his immediate custodian and files in the district of confinement, and the later transfer of the petitioner to another facility in another district does not divest the court of jurisdiction.

Alabama on the day of filing (and not New York) is the key relevant fact for establishing that venue/jurisdiction is proper only in the Northern District of Alabama.

In addition, a "majority of district courts in this Circuit, however, have [similarly] held that the immediate custodian rule applies to 'core' immigration-based habeas challenges (*i.e.*, challenges to immigration-based detention)." *S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 406 (S.D.N.Y. 2018).[7]  Courts in this District have responded to petitions similar to Ali's and filed by petitioners detained in the same facility as Ali, the Etowah County Detention Center, by transferring those petitions to the district of confinement, *i.e.*, the Northern District of Alabama. *See, e.g.*, *Benitez v. An Unknown Immigration Officer Employed by the Dep't of Homeland Sec.*, No. 1:19-cv-3153-GHW, ECF No. 7 (S.D.N.Y. July 22, 2019) (applying the immediate custodian rule and transferring a habeas petition to the Northern District of Alabama, where the petitioner was detained at the Etowah County Detention Center); *Singh v. Holder*, No. 12 Civ. 4731 (JMF), 2012 WL 5878677, at *2 (S.D.N.Y. Nov. 21, 2012) (same).

The Court should follow its prior decisions and the decisions listed in the Appendix to conclude that, under *Padilla*, the only proper forum for this case is the district of confinement, *i.e.*, the Northern District of Alabama, and that the proper respondent in this case is Keith Peeks, *i.e.*, the warden of the Etowah County Detention Center, Ali's immediate custodian.

The government acknowledges that a minority of judges within this District have reached the opposite conclusion, but the government respectfully believes that those cases were incorrectly decided, and this Court should not follow them.  Courts in this District have considered, and

---

[7] Over forty such decisions issued by over twenty judges in this District representing the majority view are listed in an Appendix to this memorandum of law.  The government provides this list of decisions, not as a head-count of judges, but instead because they are persuasive and correctly apply *Padilla*.

rejected, the analysis applied by the minority.  For example, in *S.N.C.*, Judge Caproni rejected the

venue analysis in *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 495-97 (S.D.N.Y. 2009); *You*

*v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018); *Calderon v. Sessions*, 330 F. Supp. 3d 944

(S.D.N.Y. Aug. 1, 2018); and *Mahmood v. Nielson*, 312 F. Supp. 3d 417, 423-24 (S.D.N.Y. 2018).

*See S.N.C.*, 325 F. Supp. 3d at 406 n.5, 408-09.  In *S.N.C.*, Judge Caproni rejected the approach

taken in the *Calderon* and *Mahmood* decisions, holding that "the approach most faithful to *Padilla*

and [the Second] Circuit's case law is to apply the immediate custodian rule to the petitioner's

'core' claims and the legal custodian rule to the petitioner's 'non-core' claims."  *Id.* at 409.[8]  In a

footnote, the Court also cited the *Farez-Espinoza* and *You* decisions as examples of opinions that

did not follow the approach taken by "the majority of judges in this Circuit."  *Id.* at 406 & n.4.

        In addition to the cases referenced in *S.N.C.*, three other decisions from judges in this

District have rejected the government's argument that *Padilla* applies to "core" habeas claims

brought by aliens and requires such claims to be brought in the district of confinement.  In *Matias*

*Madera v. Decker*, No. 18 Civ. 7314 (AKH), ECF No. 30 (S.D.N.Y. Sept. 30, 2018), Judge

Hellerstein declined to apply *Padilla* and instead relied on the legal control theory to conclude that

the Director of ICE's New York Field Office and the Attorney General were the proper

respondents to a habeas petition seeking release from detention or a bond hearing that was brought

by an alien who was detained in New Jersey, rather than the warden of the alien's detention facility.

*See id.* at 5.

---

[8] Like *S.N.C.*, both *Calderon* and *Mahmood* involved a "mixed" petition with both "core" and
"non-core" claims (unlike here, where Ali challenges only his present physical confinement, *i.e.*,
a "core" claim); thus, the discussion in *S.N.C.* with regard to those cases involved whether the
assertion of a "non-core" claim in a "mixed" petition somehow justified departing from the
majority view of applying *Padilla* to "core" claims challenging civil immigration detention. In
*S.N.C.*, the court concluded that it did not, as noted above.

In *Rodriguez Sanchez v. Decker*, No. 18-cv-8798 (AJN), 2019 WL 3840977 (S.D.N.Y. Aug. 15, 2019), Judge Nathan concluded that the ICE New York Field Office Director was the proper respondent because the petitioner was "held in a non-federal facility under contract with the federal government," and she viewed the proper respondent as the "federal official 'with the most immediate control' over that facility." *Id.* at *2. Judge Nathan further concluded that because the New York ICE Field Office Director (Thomas Decker) is located in the Southern District of New York, the action was properly brought in this District (notwithstanding the fact that the petitioner was detained in New Jersey). *Id.* at *4. Judge Nathan's conclusion that the ICE Field Office Director in New York is the immediate custodian, among other things, runs afoul of *Padilla*'s observation that, "[b]y definition, the immediate custodian and the prisoner reside in the same district." *Padilla*, 542 U.S. at 444. It also conflicts with *Padilla*'s rejection of the legal control theory (despite the court's statement that it is not applying the legal control theory, that is precisely what it did).

The most recent decision taking the minority view, *Cruz v. Decker*, No. 18-cv-9948 (GBD) (OTW), 2019 WL 4038555 (S.D.N.Y. Aug. 27, 2019), was issued by Magistrate Judge Wang a few weeks after Judge Nathan's decision in *Rodriguez Sanchez*, and the government has lodged objections to that order with Judge Daniels, which remain pending. Magistrate Judge Wang purported to apply *Padilla*, but also followed the Second Circuit's pre-*Padilla* decision in *Henderson* to determine that "the named federal respondents are properly named because they exercise control over Petitioner." *Id.* at *3. She determined, incorrectly and contrary to the Supreme Court's analysis in *Padilla*, that "ICE is not only [Cruz's] legal custodian, but also his immediate custodian under *Padilla*." *Id.* In reaching this conclusion, Magistrate Judge Wang relied on the contract between the state facility and ICE (the IGSA) as well as an ICE detainee

11

handbook.  *Id.* at *3-4.  She concluded that "ICE retains control of the detainees at HCCC and asserts sufficient 'immediate, physical day-to-day control' over its detainees [such that] ICE is Petitioner's immediate custodian under the rule articulated in *Padilla*."  *Id.* at *4.  Magistrate Judge Wang concluded that venue is proper in this District because "as the Director of the ICE New York Field office which exercises control over Petitioner's detention, Respondent Decker is the proper respondent."  *Id.*

Courts in this District have already considered and rejected the arguments in these outlier cases, which rely heavily on the "legal control" theory rejected in *Padilla*.  For example, in *Lizardo v. Whitaker*, Judge Caproni explained in detail why ICE's contracts with local detention facilities did not provide a proper basis for finding jurisdiction/venue for "core" challenges:

> Petitioner may be right that he is detained in the Hudson County Correctional Facility only because ICE has contracted with the Facility to house Petitioner; that, by contract, the Facility's warden may move Petitioner only with ICE's written consent; that ICE regulations purport to limit the warden's ability to file papers responsive to habeas proceedings like this one; and that 'Respondent Decker dictates every aspect of petitioner's detention, transport, transfer, and release." But these circumstances do not change the fact that the warden of the Hudson County Correctional Facility is, quite literally, Petitioner's "immediate physical custodian." And because the Court can identify such an immediate physical custodian, any inquiry into who exercises legal custody of Petitioner is irrelevant.
>
> This is so notwithstanding the existence of an IGSA or ICE rules purporting to restrict the power of the [New Jersey detention facility's] warden to produce Petitioner or respond to a habeas petition.  A federal court's authority "to issue an order directing the respondent to show cause why the writ should not be granted," to "make a return certifying the true cause of the detention," "to produce at the hearing the body of the person detained," and (potentially) to release the petitioner is conferred by statute, 28 U.S.C. § 2243, and thus may not be derogated by agency regulations or, even less authoritatively, an agreement between federal and state authorities like the IGSA at issue here.  If a court ultimately orders the warden of the [New Jersey detention facility] to show cause for Petitioner's detention; to produce Petitioner for a hearing; to give him a bond hearing or release him; or to release him, period, then the warden must do so—or refuse at his peril.

*Lizardo v. Whitaker*, No. 18-CV-8476 (VEC), 2018 WL 6444371, at *2-3 (S.D.N.Y. Dec. 5, 2018)

(footnotes, internal citations, and parentheticals omitted).[9]  Other courts agree with this analysis.

*See, e.g.*, *Lemus-Pineda v. Whitaker*, 354 F. Supp. 3d 473, 475 (S.D.N.Y. 2018) (rejecting legal

control theory based on IGSA); *Salcedo v. Decker*, No. 18-cv-8801 (RA), 2019 WL 339642, at *2

(S.D.N.Y. Jan. 28, 2019) (same); *Golding v. Sessions*, No. 18-cv-3036 (RJS), 2018 WL 6444400,

at *3 (S.D.N.Y. Dec. 6, 2018) (same).

　　More recently, four courts in this District have continued to adhere to the majority view,

notwithstanding the additional outlier decisions in *Rodriguez Sanchez* and *Cruz*.  First, after

acknowledging these outlier decisions, Judge Furman adhered to his prior decisions on venue and

held that pursuant to *Padilla* that a petitioner's petition must be brought against "the warden or the

director of the facility in which he was housed at the time that he filed his petition" and stated that

"arguments made to the contrary . . . ultimately rely on a version of the legal reality of control

theory that the *Padilla* Court rejected in unambiguous terms."  *Thomas v. Decker*, No. 19 Civ.

8690 (JMF), Transcript (attached hereto as Exhibit 1) at 17:16-18:24 (S.D.N.Y. Oct. 16, 2019);

*see also Thomas v. Decker*, No. 19 Civ. 8690 (JMF), ECF No. 26 (S.D.N.Y. Oct. 17, 2019)

(dismissing the petition without prejudice to refiling in the District of New Jersey).  Second, Judge

Woods applied *Padilla*'s immediate custodian rule to a "core" habeas challenge and issued an

order to show cause for why the court should not dismiss the petitioner's habeas claim and/or

---

[9] Given the extensive reliance by the courts in *Rodriguez Sanchez* and *Cruz* on the IGSAs and ICE regulations, the government respectfully disagrees with the unexplained assertion in those cases that their holding "does not amount to an adoption of the 'legal reality of control' standard rejected by the Supreme Court in *Padilla*."  *Rodriguez Sanchez*, 2019 WL 3840977, at *3; *Cruz*, 2019 WL 4038555, at *3; *see also S.N.C.*, 325 F. Supp. at 409 (rejecting the analysis in *Calderon* because Judge Crotty had "appl[ied] the legal control test to the petition as a whole").

transfer the action to the district where he was physically confined.[10]  *See Torres Martinez v. Decker*, No. 19-cv-8727-GHW-KNF, ECF No. 7 (S.D.N.Y. Oct. 2, 2019).  Third, Judge Caproni adhered to her prior decisions on venue and transferred an immigration petitioner's detention challenge to the District of New Jersey.  *See Pacheco Uzho*, No. 19-CV-7152 (VEC), ECF No. 11 (S.D.N.Y. Sept. 27, 2019).  Fourth, Judge Engelmayer adhered to his prior decisions on the issue, and transferred an immigration petitioner's detention challenge to the District of New Jersey.  *See Andoh v. Barr*, No. 19 Civ. 8016 (PAE), 2019 WL 4511623, at *2 & n.1 (S.D.N.Y. Sept. 18, 2019) (following *Padilla* and noting Judge Nathan's recent decision to the contrary in *Rodriguez Sanchez*).  This Court should take the same approach as it has in its prior cases, as none of the outlier decisions provide a persuasive basis for this Court to depart from its prior analysis and from the approach that continues to be taken by a majority of courts in this District.

Accordingly, because Ali had been detained in Alabama on the day he filed his petition in this Court, the Northern District of Alabama (the district of confinement) is the only appropriate forum for his challenge to his detention, and this Court should either dismiss this action or transfer the petition forthwith to the Northern District of Alabama.[11]  *See Shehnaz*, 2004 WL 2378371, at *4 ("When a civil action is filed in a district court that lacks jurisdiction, that court 'shall, if it is in the interest of justice[,] transfer such action to . . .  any other such court in which the action . . . could have been brought at the time it was filed or noticed." (quoting 28 U.S.C. § 1631)); *see also Sikivou v. DHS*, No. 06 Civ. 5530 (PKC), 2007 WL 2141564, at *2 (S.D.N.Y. July 25, 2007) ("[T]he only court with proper jurisdiction to hear a habeas corpus petition challenging current

---

[10] Petitioner subsequently stipulated to transfer the action out of this District.  *See Torres Martinez v. Decker*, No. 19-cv-8727-GHW-KNF, ECF No. 9 (S.D.N.Y. Oct. 10, 2019).

[11] To minimize any delay in having the case heard in the proper forum, the government requests that the Court waive the seven-day waiting period contained in Local Civil Rule 83.1.

confinement is the court in the district of the alien's confinement at the time of the petition's filing.").

## CONCLUSION

For the foregoing reasons, the Court should either dismiss this action or transfer Ali's petition to the U.S. District Court for the Northern District of Alabama.[12]

Dated:    New York, New York
          October 23, 2019

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York
                                        *Attorney for Respondent*

                            By:    */s/ Joshua E. Kahane*
                                        JOSHUA E. KAHANE
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Tel.: (212) 637-2699
                                        Fax: (212) 637-2786
                                        joshua.kahane@usdoj.gov

---

[12] If the Court denies the government's motion to dismiss or transfer this case, the government respectfully requests that it be permitted an opportunity to respond substantively to the petition.

15

## APPENDIX

Cases in which judges of the Southern District of New York have applied the immediate

custodian rule to require "core" challenges brought by aliens in civil immigration detention to be

brought in the district of confinement include the following (in reverse chronological order):

- *Thomas v. Decker*, 19 Civ. 8690 (JMF), ECF No. 26 (Order) (S.D.N.Y. Oct. 17, 2019)
- *Torres Martinez v. Decker*, No. 19-cv-8727-GHW-KNF, ECF No. 7 (S.D.N.Y. Oct. 2, 2019)
- *Pacheco Uzho v. McAleenan*, No. 19-CV-7152 (VEC), ECF No. 11 (S.D.N.Y. Sept. 27, 2019)
- *Andoh v. Barr*, No. 19 Civ. 8016 (PAE), 2019 WL 4511623 (S.D.N.Y. Sept. 18, 2019)
- *Benitez v. An Unknown Immigration Officer Employed by the Dep't of Homeland Sec.*, No. 19 Civ. 3153 (GHW), ECF No. 7 (S.D.N.Y. July 22, 2019)
- *Li v. Barr*, No. 19 Civ. 2030 (CM), ECF No. 39 (S.D.N.Y. June 24, 2019)
- *Li v. Barr*, No. 19 Civ. 5085 (PAE), ECF No. 9 (S.D.N.Y. June 14, 2019)
- *Heller v. Barr*, No. 19 Civ. 4003 (ER), ECF No. 13 (S.D.N.Y. May 22, 2019)
- *Peng v. Barr*, No. 19 Civ. 4525 (LGS), ECF No. 2 (S.D.N.Y. May 17, 2019)
- *Sow v. Whitaker*, No. 18-cv-11394 (GBD) (RWL), 2019 WL 2023752 (S.D.N.Y. May 8, 2019)
- *Blake v. McAleenan*, No. 19 Civ. 3371 (PAE), ECF No. 7 (S.D.N.Y. Apr. 19, 2019)
- *Kolev v. Sessions*, No. 17 Civ. 9477 (RA), 2019 WL 1748436 (S.D.N.Y. Apr. 16, 2019)
- *August v. DHS*, No. 19 Civ. 2983 (PGG), ECF No. 5 (S.D.N.Y. Apr. 15, 2019)
- *Ramirez Portillo v. Decker*, No. 19 Civ. 572 (PKC), 2019 WL 1409450 (S.D.N.Y. Mar. 28, 2019)
- *Wellington v. Barr*, No. 19 Civ. 1986 (ER), 2019 WL 1433294 (S.D.N.Y. Mar. 27, 2019)
- *Lateef v. Decker*, No. 19 Civ. 2294 (PAE), ECF No. 13 (S.D.N.Y. Mar. 19, 2019)
- *Ikharo v. Att'y Gen. of U.S.*, No. 19 Civ. 864 (CM), ECF No. 2 (*sua sponte* transfer order) (S.D.N.Y. Feb. 26, 2019)
- *Brudy v. Decker*, No. 19 Civ. 1565 (LGS), ECF No. 7 (S.D.N.Y. Feb. 25, 2019)
- *Ramos Perez v. Decker*, 355 F. Supp. 3d 185 (S.D.N.Y. 2019)
- *Smith v. Whitaker*, No. 19 Civ. 1363 (CM), ECF No. 2 (transfer order) (S.D.N.Y. Feb. 13, 2019)
- *Salcedo v. Decker*, No. 18 Civ. 8801 (RA), 2019 WL 339642 (S.D.N.Y. Jan. 28, 2019)
- *Lemus-Pineda v. Whittaker*, 354 F. Supp. 3d 473 (S.D.N.Y. 2018)
- *Jurek v. Decker*, No. 18 Civ. 9285 (ER), 2018 WL 6444216 (S.D.N.Y. Dec. 6, 2018)
- *Golding v. Sessions*, No. 18 Civ. 3036 (RJS), 2018 WL 6444400 (S.D.N.Y. Dec. 6, 2018)
- *Almazo v. Decker*, No. 18 Civ. 9941 (PAE), 2018 WL 5919523 (S.D.N.Y. Nov. 13, 2018)
- *Yunga v. Nielsen*, No. 18 Civ. 8708 (RA), ECF No. 8 (order) (S.D.N.Y. Sept. 26, 2018)
- *Gomez v. Decker*, No. 18 Civ. 4009 (KPF), ECF No. 63 (S.D.N.Y. Sept. 7, 2018)
- *Traore v. Decker*, No. 18 Civ. 7909 (JMF), ECF No. 9 (transfer order) (S.D.N.Y. Sept. 13, 2018)
- *Pastor v. Sessions*, No. 18 Civ. 6941 (CM), ECF No. 5 (order) & ECF No. 9 (transcript) (S.D.N.Y. Aug. 3, 2018)

- *Suraiya v. Cioppa*, No. 18 Civ. 6628 (JMF), ECF No. 17 (order) & ECF No. 18 (transcript) (S.D.N.Y. July 31, 2018)
- *Cesar v. Shanahan*, No. 17 Civ. 7974 (ER), 2018 WL 1747989 (S.D.N.Y. Feb. 5, 2018)
- *Chan Lo v. Sessions*, No. 17 Civ. 6746 (GHW), 2017 WL 8786850 (S.D.N.Y. Sept. 15, 2017)
- *Adikov v. Mechkowski*, No. 16 Civ. 3797 (JPO), 2016 WL 3926469 (S.D.N.Y. July 18, 2016)
- *Fortune v. Lynch*, No. 15 Civ. 8134 (KPF), 2016 WL 1162332 (S.D.N.Y. Mar. 22, 2016)
- *Bacuku v. Shanahan*, No. 16 Civ. 0305 (LGS), 2016 WL 1162330 (S.D.N.Y. Mar. 1, 2016)
- *German v. Green*, No. 15 Civ. 4691 (WHP), 2015 WL 7184992 (S.D.N.Y. Oct. 30, 2015)
- *Rone v. Holder*, No. 15 Civ. 2815 (ER), 2015 WL 13722402 (S.D.N.Y. June 5, 2015)
- *Concepcion v. Aviles*, No. 14 Civ. 8770 (AT), 2015 WL 7766228 (S.D.N.Y. Mar. 12, 2015)
- *Phrance v. Johnson*, No. 14 Civ. 3569 (TPG), 2014 WL 6807590 (S.D.N.Y. Dec. 3, 2014)
- *Singh v. Holder*, No. 12 Civ. 4731 (JMF), 2012 WL 5878677 (S.D.N.Y. Nov. 21, 2012)
- *Medina-Valdez v. Holder*, No. 12 Civ. 6002 (RA), 2012 WL 4714758 (S.D.N.Y. Oct. 1, 2012)
- *Allen v. Holder*, No. 10 Civ. 2512 (GBD) (JLC), 2011 WL 70558 (S.D.N.Y. Jan. 4, 2011)
- *Freire v. Terry*, 756 F. Supp. 2d 585 (S.D.N.Y. 2010)
- *Guo v. Napolitano*, No. 09 Civ. 3023 (PGG), 2009 WL 2840400 (S.D.N.Y. Sept. 2, 2009)
- *Wash. v. Dist. Dir., INS*, No. 04 Civ. 3492 (RMB) (MHD), 2005 WL 2778747 (S.D.N.Y. Oct. 19, 2005)
- *Drakoulis v. Ashcroft*, 356 F. Supp. 2d 367 (S.D.N.Y. 2005)
- *Azize v. Bureau of Citizenship and Immigration Serv.*, No. 04 Civ. 9684 (SHS) (JCF), 2005 WL 3488333 (S.D.N.Y. Oct. 7, 2005)
- *Shehnaz v. Ashcroft*, No. 04 Civ. 2578 (DLC), 2004 WL 2378371 (S.D.N.Y. Oct. 25, 2004)